**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------- X
                                    :
DISCOVER FINANCIAL SERVICES, DFS    :
SERVICES, LLC, and DISCOVER BANK,   :
                                    :        **04-CV-7844 (BSJ)(DFE)**
                 Plaintiffs,        :
                                    :        **OPINION and ORDER**
        -v-                         :
                                    :
VISA U.S.A. INC., VISA              :
INTERNATIONAL SERVICE ASSOCIATION,  :
MASTERCARD INCORPORATED, and        :
MASTERCARD INTERNATIONAL            :
INCORPORATED,                       :
                                    :
                 Defendants.        :
--------------------------------- X

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs Discover Financial Services, DFS Services, LLC, and Discover Bank ("Discover") filed this private antitrust action pursuant to sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, seeking damages from Visa U.S.A. Inc. and Visa International Service Association ("Visa"), and MasterCard Incorporated and MasterCard International Incorporated ("MasterCard") for various alleged violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.  In an Opinion and Order dated August 20, 2008, the Court resolved various motions for summary judgment; this Order addresses Visa's and MasterCard's motions seeking to preclude Discover from alleging any damages attributable to the failure of "Project Explorer." For the reasons that follow, Defendants' motions are DENIED.

**BACKGROUND**

This private action seeks damages based on harm to Discover allegedly caused by Visa and MasterCard through the enactment of exclusionary rules, Visa Bylaw 2.10(e) and MasterCard's Competitive Programs Policy ("CPP"), that prevented Visa and MasterCard member banks from issuing American Express and Discover cards.  The history of these rules and their effects are discussed at length in this Court's decision in the Department of Justice's ("DOJ") antitrust action against Visa and MasterCard, United States v. Visa U.S.A. Inc., 163 F. Supp. 2d 322 (S.D.N.Y. 2001) ("Visa I"), and in the Second Circuit's affirmance of that decision in United States v. Visa U.S.A. Inc., 344 F.3d 229 (2d Cir. 2003) ("Visa II"); familiarity with these decisions and the Court's August 20, 2008 Opinion and Order is assumed.

**DISCUSSION**

I.   Summary Judgment Standard

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986).  "It is the movant's burden to show that no genuine factual dispute exists."  Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).  Summary judgment is inappropriate if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  "In the context of antitrust litigation the range of inferences that may be drawn from ambiguous evidence is limited; the non-moving party must set forth facts that tend to preclude an inference of permissible conduct."  Capital Imaging Associates, P.C. v. Mohawk Valley Medical Associates, 996 F.2d 537, 542 (2d Cir. 1993).

II.   The Challenge to Damages Attributable to Project Explorer

A.   Requirements for Damages Models in Antitrust Cases

"Causation in fact is, of course, a necessary element of any claim for relief under Section 4 of the Clayton Act."  Argus Inc. v. Eastman Kodak Co., 801 F.2d 38, 41 (2d Cir. 1986).  The Plaintiff bears the burden to show that "the injuries alleged would not have occurred but for" a Defendant's antitrust

violation.  Id.  To show causation, a Plaintiff must show that a Defendant's conduct was a "substantial or materially contributing factor" to the damages alleged.  Litton Systems, Inc. v. American Telephone & Telegraph Co., 700 F.2d 785, 823 n.49 (2d Cir. 1983).  "[O]nce proof of injury causation has been established, courts have allowed antitrust plaintiffs considerable latitude in proving the amount of damages.  Proof of amount of damages thus need not conform to a particular theory or model, and exact proof of the amount of damages is not required."  United States Football League v. National Football League, 842 F.2d 1335, 1378 (2d Cir. 1988) ("U.S.F.L.") (internal citation omitted).  "An antitrust plaintiff must thus provide only sufficient evidence to support a 'just and reasonable estimate' of damages."  Id.  The "willingness to accept a degree of uncertainty in these cases rests in part on the difficulty of ascertaining business damages as compared, for example, to damages resulting from a personal injury or from condemnation of a parcel of land.  The vagaries of the marketplace usually deny . . . sure knowledge of what plaintiff's situation would have been in the absence of the defendant's antitrust violation."  J. Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557, 567 (1981).

The Supreme Court has noted that "[t]he most elementary conceptions of justice and public policy require that the

4

wrongdoer shall bear the risk of the uncertainty which his own wrong has created." Bigelow v. RKO Radio Pictures, 327 U.S. 251, 265 (1946). However, "[w]hatever latitude is afforded antitrust plaintiffs as to proof of damages, however, is limited by the requirement that the damages awarded must be traced to some degree to unlawful acts. That latitude is thus circumscribed by the need for proof of causation." U.S.F.L., 842 F.2d at 1378 (internal citation omitted).

"The [Supreme] Court has repeatedly held that in the absence of more precise proof, the factfinder may conclude as a matter of just and reasonable inference from the proof of defendants' wrongful acts and their tendency to injure plaintiffs' business, and from the evidence of the decline in prices, profits and values, not shown to be attributable to other causes, that defendants' wrongful acts had caused damage to the plaintiffs." Zenith, 395 U.S. at 123-24 (internal quotation marks omitted; emphasis added). Thus, courts have rejected damage models that inadequately demonstrate a causal link between the allegedly unlawful activity and the losses caused, by, inter alia, failing to take into account losses attributable to market forces and lawful competition. See, e.g., Intimate Bookshop v. Barnes & Noble, Inc., No. 98 Civ. 5564 (WHP), 2003 WL 22251312, at *8 (S.D.N.Y. Sept. 30, 2003) ("As noted, [plaintiff]'s unsupported assumption of causation

and supposition that all of its losses were caused by defendants' allegedly unlawful conduct, and failure to account for defendants' lawful conduct and intervening market factors are fatal to its claim."); Litton Systems, Inc. v. Honeywell, Inc., No. CV 90-4823 MRP, 1996 WL 634213, at *3 (C.D. Cal. July 24, 1996) ("Because [plaintiff]'s damage model did not attribute an amount of damages to particular [defendant] conduct, but rather attributed a single estimate of damages to all of the challenged conduct taken together -- even conduct that was excluded from consideration by the jury -- the jury had no rational basis to determine an appropriate damage award.").

B.   Overview of Discover's Damages Model

Under Discover's alternative damages model, also known as the "Project Explorer" model, "Discover enters into a joint venture deal with Citibank, a prospective deal discussed between the parties in the actual world."  (Decl. of Jerry Hausman, Ex. A (Expert Report of Jerry Hausman) ("Hausman Report") ¶ 151.) "Discover's discussions with Citibank involved a range of possible options, centering on a joint venture that would have combined Discover's network with Citibank's Diners network, and the movement of Citibank's issuing volumes over to the combined network."  (Id. ¶ 262.)  "The primary options discussed [to move the issuing volumes] were 'Big Bang' and 'Cross Sell.'  Big Bang would have involved a rapid movement and conversion of

Citibank's issuing volumes to the network; Cross Sell would have involved a more gradual movement of Citibank card volumes." (Id.) "There is evidence that Citibank would have preferred the Cross Sell option because it would have largely avoided $2 billion in attrition costs that were built into estimates for the Big Bang option to account for Citibank having to convert rapidly its card base to the Explorer network under that scenario." (Id. ¶ 263.) "Cross Sell, however, was precluded by the exclusionary rules. A gradual movement of Citibank volumes would have required simultaneously issuing cards on the Explorer network and the Visa and MasterCard networks for a sustained period of time in violation of the exclusionary rules." (Id. ¶ 264.)

This model "focus[es] on estimating the additional profits Discover would have enjoyed had the exclusionary rules not existed and the parties been able to enter into a joint venture agreement in the but-for world." (Id. ¶ 151.) As in the primary model (discussed in greater length in the Court's August 22, 2008 Order), "[t]his approach leads to lost profits for Discover from both a network and issuing perspective." (Id.)

C.   The Challenges to the "Project Explorer" Model

Visa and MasterCard contend principally that there is insufficient competent evidence to permit a reasonable fact-finder to find that the exclusionary rules were a substantial

7

contributing factor to the failure of Project Explorer.

Further, they argue that even if there is sufficient evidence to

permit such a finding, that the Court should nevertheless grant

summary judgment in their favor, because in their view, the

existence of an alternative Visa Bylaw -- Bylaw 2.06, which

excluded from Visa membership banks that issued Discover or

American Express cards, and which the Tenth Circuit found in a

case before it not to violate the Sherman Act -- would have

allowed Visa to lawfully revoke Citibank's Visa membership had

Project Explorer gone forward.[1]  Thus, under this theory, the

failure of Project Explorer would be attributable entirely to

lawful action.

First, Visa and MasterCard contend that a variety of other

factors, and not the exclusionary rules, were the cause of

Project Explorer's failure.  Specifically, they attribute the

failure of Project Explorer to Discover and Citibank's inability

to reach an agreement on other factors such as, inter alia, the

"[t]he parties' divergent valuation of virtually every deal

element," "Discover's merchant acceptance gap," and

"[t]echnological complications."  Further, Defendants argue that

statements by various Discover executives identifying the

exclusionary rules as the "main reason" for Project Explorer's

---

[1] Although MasterCard did not have a rule analogous to Bylaw 2.06 on the
books, it contends that pursuant to the Tenth Circuit's holding, it "would
not have been required to permit Citibank to continue as a member."

8

failure are nothing more than self-serving post-hoc

rationalizations that are insufficient to create a genuine issue

of material fact.

The record before this Court, viewed in the light most

favorable to Discover, shows that there is sufficient competent

evidence to create a genuine issue of material fact.  First,

there is testimony by several Discover executives attributing

the failure of Project Explorer to the exclusionary rules.  For

example, Will O'Hara, a Discover executive, testified during a

deposition in the DOJ action in 1999 that "[t]he main reason

[the discussions about Project Explorer were] discontinued is

Citibank was unwilling to convert its substantial card volume to

this new network because it was afraid of the repercussions of

[Visa's] bylaw if they did that."  (Decl. of Laura B. Kadetsky

Ex. 32 (Deposition of Will O'Hara, United States v. Visa U.S.A.

Inc., No. 98-CV-7076, Nov. 18, 1999) at 134:4-9.)  Another

Discover executive, Thomas Butler, testified in a deposition for

this case that he had a "general sense" that the exclusionary

rules were "a major consideration" during the negotiations

between Discover and Citibank.  (Decl. of Laura B. Kadetsky Ex.

34 (Deposition of Thomas R. Butler, Discover v. Visa, No. 04-CV-

7844, May 9, 2007) at 163:22-23.)

While it is true that with respect to antitrust injury "the

isolated self-serving statements of a plaintiff's corporate

officers may not provide substantial evidence upon which a jury

can rely," Argus Inc., 801 F.2d at 42 (internal quotation marks

omitted), the Court finds that these statements fall just

outside this prohibition.  In Argus, Inc., for example, the

Court declined to credit a post-facto attribution of the failure

of Plaintiff's business to Defendant's conduct where the

"contemporaneous accounts of the reasons for its economic

ailments consistently contradict[ed] its present position," id.,

and the damages theory "was not advanced in the litigation . . .

until it became tactically convenient," id. at 43.  Here, there

is ample evidence in the record that is wholly consistent with

Discover's theory.  For example, there is testimony from

Citibank executives that the exclusionary rules were a serious

consideration during the Project Explorer negotiations, (see,

e.g., Decl. of Laura B. Kadetsky Ex. 3 (Deposition of Daniel

Clark, Discover v. Visa, No. 04-CV-7844, Jan. 9, 2007), at

79:13-16 ("One of the considerations was if we joined with

Discover and if the brand remained at Discover, given 210(e) and

the CPP, then we would have some hard decisions to make about

our own brands.")).  Whether Discover's view that the

exclusionary rules predominated the discussions should be

credited in light of less vigorous statements by Citibank

representatives is a determination best left to a jury, not this

Court.  Further, while testimony by Discover executives given

during the course of this litigation have a greater potential to be self-serving rationalizations, the Court notes that a clear attribution of the failure of Project Explorer was noted by Will O'Hara in 1999 for the DOJ action, well before the filing of this private action. And other contemporaneous documentary evidence could be viewed by a jury to support Discover's contentions.

This evidence, though thin even when viewed in the light most favorable to Discover, is enough to survive summary judgment. Discover has identified the existence of disputed issues of material fact on the issue of whether the exclusionary rules were a substantial or materially contributing factor to the failure of Project Explorer. As the Court has previously emphasized, it is not for this Court at this stage to assess the weight or credibility of Discover's evidence in support of or Visa's and MasterCard's challenges to the Project Explorer damages model; rather, these disputed issues of material fact should be resolved by the jury.

Further, the Defendants' reliance upon SCFC ILC, Inc. v. Visa USA, Inc., 36 F.3d 958 (10th Cir. 1994) ("MountainWest"), is unavailing. MountainWest involved a challenge to Visa Bylaw 2.06, which provided in pertinent part that Visa "shall not accept for membership any applicant which is issuing, directly or indirectly, Discover cards or American Express cards, or any

11

other cards deemed competitive by the Board of Directors; an

applicant shall be deemed to be issuing such cards if its

parent, subsidiary or affiliate issues such cards," id. at 961.

The Tenth Circuit found that Bylaw 2.06 did not violate the

Sherman Act, crediting Visa's procompetitive justification that

"it instituted Bylaw 2.06 to protect its property from

intersystem competitors who otherwise  would enjoy a free ride

at this time of entry," id. at 969, and that Visa did not want

to allow competitors to "tak[e] advantage of a brand and

operating systems that [they] not only had done nothing to

create but had chosen to compete against," id. at 970.

Based on the Tenth Circuit's determination that the application of Bylaw 2.06 against

MountainWest was not a violation of the Sherman Act, Defendants argue that they would have

lawfully been able to exclude Citibank from membership in their associations if it had executed

Project Explorer, and thus, that all the damages would have flowed from lawful conduct.  The

Court disagrees.  The Tenth Circuit's determination based on the procompetitive justification

proffered by Visa bears little resemblance to the situation here; it is not clear that it would be

lawful to expel a member bank that had made contributions to the development and upkeep of

the system infrastructure because of efforts made to leave the system.  Thus, the Court declines

to read MountainWest to

stand for the proposition that Defendants would have a categorical legal right to exclude Citibank from their associations under the circumstances presented by Project Explorer.

## CONCLUSION

For the foregoing reasons, the Court DENIES Visa's and MasterCard's motions for summary judgment on Discover's Project Explorer damages model.       ·

**SO ORDERED:**

BARBARA S. JONES
**UNITED STATES DISTRICT JUDGE**


Dated:      New York, New York
            August 26, 2008